```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

CHARLES FREDRICKSON,                )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    No. 10 C 439
                                    )
PROVISO TOWNSHIP; MICHAEL CORRIGAN; )
DON SLOAN; TIMOTHY GILLIAN; ANTHONY )
"TONY" WILLIAMS; MARI HERRELL; and  )
RONALD SERPICO,                     )
                                    )
        Defendants.

## MEMORANDUM OPINION AND ORDER

Charles Fredrickson has sued Proviso Township, and, each in his or her individual capacity, five individual Township board members and Ronald Serpico, who is the mayor of Melrose Park. Plaintiff asserts violations of 42 U.S.C. § 1983 and the Illinois common law of conspiracy. In count I, plaintiff alleges that all defendants except Serpico violated his First Amendment right to freedom of speech. In count II, he alleges that all defendants, including Serpico, conspired to deprive him of that constitutional right. Before me is defendant Serpico's motion to dismiss the count against him, which I grant for the following reasons.

                               I.

A motion to dismiss tests the sufficiency of the complaint, not its merits. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). I must accept all well-pleaded factual

allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). I need not, however, assume the truth of "a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiff must allege sufficient factual material to suggest plausibly that he is entitled to relief. *Id*. Although this does not amount to a "probability requirement," and a well-pleaded complaint may proceed even if recovery appears unlikely, *id.*, plaintiff must nevertheless "present a story that holds together." *Swanson v. Citibank*, N.A.,---F.3d---, 2010 WL 2977297 at *3 (7th Cir. 2010).

## II.

The story plaintiff tells in this case is one of political patronage, a familiar subject to the courts in this district. *See Tarpley v. Keistler*, 188 F.3d 788, 789 (7th Cit. 1999) ("For a quarter century now, well-meaning Illinois citizens periodically have turned to the courts in attempts to rid the state of an age-old rite: rewarding political supporters with the spoils of power, notably, but not exclusively, public employment.") In this case, plaintiff alleges that in April of 2001, a slate of candidates for the Proviso Township board was elected over an opposing slate

backed by defendant Serpico.[1]  The newly elected board appointed plaintiff, in June of 2001, to the position of Coordinator of Transportation for the Township.  Plaintiff replaced defendant Serpico's brother in that position, and defendant Serpico "believes that his brother was fired for political reasons."

Plaintiff held his position (which was later renamed "Director of Transportation") from June of 2001 until June of 2009.  During that time, plaintiff was politically active in a number of municipal elections in which he supported defendant Serpico's political opponents.  In 2002, for example, plaintiff supported Serpico's successful opponent in the race for Cook County Commissioner. Serpico told plaintiff during that campaign, "I don't know when or how, but I'll get you."

In the 2005 Township board election, plaintiff supported candidates opposed to Serpico's slate, which included defendants Sloan, Gillian, Williams, and Herrell.  Serpico, whose endorsement was powerful,[2] "hand-picked" these candidates because they would "owe their success" to him and would "vigorously pursue his political agenda."  Ultimately, all of Serpico's candidates were

---

[1] The complaint does not state what public office or offices, if any, Serpico held at any point prior to his 2009 election as mayor of Melrose Park.

[2] Plaintiff claims that the candidates Serpico supports often receive upwards of seventy percent of the Melrose Park vote, and that more votes are cast in Melrose Park than in any other municipality in the Township.

3

elected except for Herrell, who lost the race for Township Supervisor to Kathleen Ryan, the candidate plaintiff supported.

Shortly after the 2005 election, Serpico met with the newly elected board members whose candidacy he had supported and told them that he wanted plaintiff fired. Plaintiff was not terminated, however, because Ryan, who plaintiff claims "had to approve all Proviso Township terminations," refused to authorize plaintiff's termination.

In the 2009 municipal elections, Serpico again supported candidates for the Township board who would vigorously pursue his political agenda. Plaintiff, for his part, again supported opponents to Serpico's slate. The candidates Serpico supported won all five positions on the Township Board. In addition, Serpico himself was successful in the 2009 Melrose Park mayoral race, in which plaintiff had supported Serpico's opponent.

On June 15, 2009, defendant Corrigan informed plaintiff that he would be terminated "because of politics" and that there would be a pre-termination hearing two days later. On June 17, 2009, "upon the recommendation of Defendant Corrigan," the Board voted to remove plaintiff from his position as Director of Transportation and replace him with an individual who had "donated thousands of dollars to the Serpico slate's campaign fund."

III.

Defendant Serpico raises two grounds for dismissal of the conspiracy claim against him. First, he argues that plaintiff has not adequately pleaded that he was a "willful participant in joint activity" with public officials. *Vickery v. Jones*, 100 F.3d 1334, 1344 (7th Cir. 1996) (quoting *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 152 (1970)). This plaintiff must do because a violation of § 1983 requires state action, and although Serpico is the mayor of Melrose Park, he is not alleged to have acted in that capacity with respect to the claims here. Accordingly, to survive Serpico's motion to dismiss, the complaint must provide a plausible basis for claiming that Serpico "reached an understanding" with public officials to deprive him of his constitutional rights. *Adickes*, 398 U.S. at 152; *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). Second, Serpico claims that he is protected by the *Noerr-Pennington* doctrine, which shields private citizens from civil liability for petitioning the government to act in their favor, even if the result of the petition harms the interests of others. *See United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-44 (1961).

As to the sufficiency of plaintiff's pleading, while plaintiff is correct that the existence of a § 1983 conspiracy is a fact-driven inquiry, the facts he alleges generally tend to undermine,

rather than support, his conspiracy theory.  Plaintiff argues that his claim is supported by the following allegations: 1) that Serpico told the board member defendants in 2005 that he wanted plaintiff fired; 2) that the board member defendants were beholden to Serpico because he was instrumental in their election; and 3) that defendant Sloan voted to terminate plaintiff because Serpico told him to do so.  Plaintiff contends that these facts are sufficient to state a § 1983 conspiracy claim under the Seventh Circuit's dicta in *Tarpley v. Keistler*, 188 F.3d 788 (7th Cir. 1999), in which the court speculated that on the evidence presented in that case, a jury might believe that the state merely "rubber-stamped" the private defendant's pick for a particular position. 188 F.3d at 793.[3]  But if the board member defendants knew in 2005 that Serpico wanted plaintiff terminated, and they were so beholden to him that they could do nothing but "rubber-stamp" his employment decisions, how then could they have failed to terminate plaintiff in the ensuing four years?  Moreover, if Serpico had "reached an understanding" with the defendant board members at their 2005

---

[3]The *Tarpley* court considered evidence that the private defendant in that case "attended meetings with state employees, including representatives of the Governor's office; he spoke with the Governor's office about [the preferred candidate]'s interest in the position; and he spoke with his Department personnel contact, who relayed [the preferred candidate]'s name to the Governor's office.  The Governor's office forwarded only one candidate's name-[the preferred candidate]'s-to the Choate personnel officer with ultimate hiring authority, Alice Kerns. No other candidates were suggested." *Id*.

6

meeting (the only occasion on which Serpico is alleged to have discussed plaintiff with any of the board members) to fire plaintiff, why did Serpico *again* support defendants Sloan, Gillian, and Williams in the 2009 election, despite their failure to carry out this "understanding" during their first mandate?  Plaintiff's allegation that they required Kathleen Ryan's approval to do so is no answer, since that is a legal conclusion belied by Illinois law. *See* 60 ILCS 1/80-5 (providing that the each of the township supervisor and four additional board members is entitled to one vote).

This leaves only the allegation that defendant Sloan voted to terminate plaintiff because Serpico "told him to."  Standing alone, this allegation simply cannot shoulder the weight of plaintiff's conspiracy claim, particularly since the complaint states that the board voted to terminate plaintiff "upon the recommendation of Defendant Corrigan" – the one board member *not* alleged to have been either present for the 2005 meeting or "hand-picked" by Serpico. If plaintiff's conspiracy theory "holds together" in the abstract, it plainly comes apart on these facts.

Moreover, I agree that Serpico is shielded from liability for his alleged conduct under the *Noerr-Pennington* doctrine. Plaintiff acknowledges that the doctrine applies in § 1983 conspiracy cases, *see Tarpley*, 188 F.3d at 794-95, but he argues that Serpico's

7

alleged conduct falls into the "sham" exception to the doctrine. Neither the facts nor the law supports plaintiff's position.

As the *Tarpley* court explained, the "sham" exception to *Noerr-Pennington* immunity applies in "'situations in which persons use the governmental process[,] as opposed to the outcome of that process,' to directly harm or harass another party." 188 F.3d at 794 (quoting *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991)) (alteration in *Tarpley*). The "classic" example described in *City of Columbia* is "the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." 499 U.S. at 380. The facts plaintiff alleges bear no resemblance to this type of situation. Plaintiff's termination--the *outcome* of the challenged state action--was precisely Serpico's alleged objective. Even assuming Serpico's conduct was wrongful, then, it does not fall within the "sham" exception to *Noerr-Pennington*: "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all...not one who genuinely seeks to achieve his governmental result, but does so through improper means." *Id.* (Internal quotations and citations omitted).

The cases plaintiff cites do not compel a contrary conclusion. In *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006), the court concluded that defendant was not entitled to *Noerr-Pennington*

immunity because his conduct, which included ongoing harassment of the plaintiff such as "hostile and intimidating" behavior, false public accusations of the plaintiff's corruption, and similar defamatory attacks, "cannot be construed as 'petitioning activity' under any reasonable interpretation of that term. *Hill*, 455 F.3d at 243. By contrast, Serpico's alleged conduct is more like that alleged in *Tarpley*, where the court concluded that the defendant was "simply playing politics...by exercising his constitutionally-protected right to petition the government." *Id*. at 795.

Nor does plaintiff's insistence that Serpico's intent was sinister--to "retaliate" or "punish" him for his political alliances--alter the analysis. Plaintiff cites two cases, in a footnote, in support of this theory. In the first, *Nickum v. Village of Saybrook*, 972 F. Supp. 1160, 1172 (C.D. Ill. 1997), the court acknowledged that the "sham" exception to *Noerr-Pennington* did not apply, since the defendants genuinely sought the outcome they solicited. Nevertheless, the court declined to shield the defendants under *Noerr-Pennington* on the ground that the plaintiff's allegations suggested that the means the defendants used to petition the government excluded the plaintiff's access to the same process, effectively denying her due process. *Id*. Nothing in the *Nickum* court's reasoning supports the argument that Serpico's intent to "punish" or "retaliate against" plaintiff brings his alleged conduct within the realm of the "sham" exception

9

to the *Noerr-Pennington* doctrine. Moreover, nothing in the present allegations suggest that plaintiff was prevented, as the *Nickum* plaintiff claimed she was, from petitioning the Township Board on his own behalf. Indeed, plaintiff explicitly claims to have been given a "pre-termination hearing." In this respect, too, this case more closely resembles *Tarpley*, in which the court acknowledged that the plaintiff could "play[] politics" just as the defendant had by exercising his own "constitutionally-protected right to petition the government." 188 F.3d at 795.

Plaintiff's second citation falls even farther from the mark. *Blount v. Stroud*, 915 N.E.2d 925 (Ill. App. Ct. 2009), did not involve a § 1983 conspiracy claim at all, but rather retaliation claims brought under 42 U.S.C. § 1981 and state law. The court noted that the defendants had cited no authority for applying the *Noerr-Pennington* doctrine in that context, and it declined to do so on the ground that retaliation claims are similar to defamation claims, which the Supreme Court has held are outside the reach of the *Noerr-Pennington* doctrine. *Blount*, 915 N.E.2d at 948 (citing *McDonald v. Smith*, 472 U.S. 479, 485 (1985)).[4]

In sum, the conduct plaintiff attributes to Serpico appears to fall squarely within the scope of the *Noerr-Pennington* doctrine as it has been interpreted in the context of § 1983 conspiracy claims.

---

[4]The *Blount* court reasoned that both retaliation claims and defamation claims require a showing of intent to harm. No such showing is required for § 1983 conspiracy claims.

10

IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 23, 2010